United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1075

Erin Marie Schmidt,
for the United States Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **Cord David Johnson and** | § | Case No. 19-42063-ELM-7 |
| **Sunny Lea Johnson,** | § | |
| | § | |
| **Debtors.** | § | |

**United States Trustee's Objection to *Debtors' Motion to Convert Their Chapter 7 Case To A Case Under Chapter 11, And For Authority To Elect Treatment Under Subchapter 5, As A Small Business Case*** [docket no. 57]

TO THE HONORABLE EDWARD LEE MORRIS,
UNITED STATES BANKRUPTCY JUDGE:

William T. Neary, the United States Trustee for the Region 6 ("United States Trustee") objects to *Debtors' Motion to Convert Their Chapter 7 Case to a Case under Chapter 11, and for Authority to Elect Treatment under Subchapter 5, as a Small Business Case* ("Conversion Motion"). [docket no. 57]. The United States Trustee would show:

**Summary**

The United States Trustee objected to discharge under 11 U.S.C. § 727(a) because Debtors 1) made numerous false oaths and inaccuracies in connection with their bankruptcy filing and 2) transferred at least two vehicles from Mr. Johnson's personal

1

possession to that of his mother's company, El Reno Energy, LLC ("El Reno Energy"). Now Debtors, who are both wage earners and who have denied control and ownership of any business, now seek to convert their chapter 7 case to subchapter 5 of chapter 11. Debtors' motion should be denied both because 1) they have demonstrated bad faith both before and after the filing of their bankruptcy; 2) Debtors should be estopped from asserting that Mr. Johnson earns sufficient income from El Reno Energy to fund a plan of reorganization; and 3) neither Debtor (if their assertions are to be believed) are currently operating or engaging in business and therefore do not qualify as small business debtors under either 11 U.S.C. §§ 101(51D) or 1182(1)(A).

## Facts

Bankruptcy filing

1. Cord and Sunny Johnson ("Debtors") filed a chapter 7 petition on May 22, 2019 in the United States Bankruptcy Court for the Northern District of Texas, commencing case no. 19-42063-ELM-7.

2. Areya Holder Aurzeda is the chapter 7 trustee.

3. The chapter 7 § 341 meeting of creditors commenced on July 23, 2019 and concluded on August 20, 2019.

4. When Debtors filed their bankruptcy petition in May 2019, at least two state court lawsuits were pending against Mr. Johnson.

United States Trustee objects to Debtors' discharge

5. On March 13, 2020, the United States Trustee objected to Debtors' discharge under 11 U.S.C. § 727(a) ("Complaint"), commencing adversary proceeding 20-4017-ELM.

6. The United States Trustee alleged that Debtors should be denied a discharge under

2

1) § 727(a)(4)(A) for making numerous false oaths on their schedules, statement of financial affairs, and § 341 meeting; 2) § 727(a)(2)(A) for concealment and transfer of a 2011 GMC Sierra 1500 to El Reno Energy shortly before the filing of their petition; and 3) § 727(a)(2)(B) for the concealment and transfer of a 2001 Jeep Cherokee after the filing of their bankruptcy petition.

7. Debtors responded to the United States Trustee's Complaint on May 18, 2020.

8. The United States Trustee incorporates the Factual Allegations section of his Complaint into this Objection.

<u>Debtors move to convert case to subchapter 5 of chapter 11</u>

9. On May 4, 2020, Debtors filed their Conversion Motion, which seeks court authority to 1) convert case to chapter 11 and 2) elect treatment of their chapter 11 as a subchapter 5 small business debtor case.

10. The Conversion Motion states that while "El Reno Energy formally remains the operator for a few oil wells…it no longer generates any revenue from the oil and gas business." *Id.* at n. 1.

11. The Conversion Motion avers that Debtors' non-contingent liquidated obligations are less than $2.725 million once duplicated claims are accounted for on the current schedules. *Id.* at ¶ 11.

12. Debtors also argue that their non-contingent liquidated obligations fall within the temporary debt increase to $7.5 million under the CARES Act. *Id.* at ¶ 11.

13. Cord Jonson now "runs a family trucking business called El Reno Energy, LLC, d/b/a El Reno Service," which is owned 100% by Cord Johnson's mother Haven Johnson. Conversion Motion at ¶¶ 7-8.

3

14. The Conversion Motion argues that Mr. Johnson is "a small business debtor within the statutory definition" in that he is a "person engaged in commercial or business activities." *Id.* at ¶ 13.

15. The Conversion Motion further argues that the "possibility of substantial payment of allowed claims pursuant to a small business plan of reorganization should obviate the need to ligate the Adversary Proceeding." *Id.* at ¶ 15.

El Reno Energy, LLC and Cord Johnson

16. The United States Trustee's Complaint alleges that Debtors' false oaths under 11 U.S.C. § 727(a)(4)(A) arise from, among other things, sworn statements regarding Mr. Johnson's role with El Reno Energy, LLC ("El Reno Energy"). *See, e.g.,* Complaint ¶¶ 42-55; 73; 99-111, 148(a) and (b), and 149.

17. Specifically, the United States Trustee argues that Debtors did not fully disclose Mr. Johnson's role as a controlling person of El Reno Energy. Complaint ¶¶ 148(a) and (b); 149. Furthermore Mr. Johnson, in addition to drawing a salary from El Reno Energy, has also used the business accounts to pay for personal expenses in lieu of maintaining his own personal bank account. *Id.* at ¶¶ 42-55; 73; 97; 99; 104-109.

Mr. Johnson's conflicting testimony about his El Reno Energy compensation

18. The Motion Convert avers that Mr. Johnson "manages the business affairs of El Reno on a day to day basis and currently earns a salary of $6,000, which is paid by W-2." *Id.* at ¶ 8.

19. Debtors averred on Schedule I that Mr. Johnson, as of the petition date, worked as a "Drilling Manager" for El Reno Energy, where he grossed $5,538.48 each month. [docket no. 1 at p. 66].

4

20. According to SOFA 4, Mr. Johnson earned only $27,692.40 in gross income from employment from the period January 1, 2019 through May 22, 2019, which averages approximately $5,500.00 each month. [docket no. 1 at p. 75].

21. Debtors averred on SOFA 4 that Mr. Johnson grossed only $43,846.59 from employment in 2018, which averages approximately $3,653.00 each month. [docket no. 1 at p. 75].

22. In their Answer to the United States Trustee's Complaint, Debtors aver that Mr. Johnson was put on the El Reno Energy payroll in January 2018. Answer at ¶ 42.

23. Debtors did not disclose Mr. Johnson's connections to El Reno Energy on SOFA 27, which asks debtors the following:

> 27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?
>
> ☑ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
> ☑ A member of a limited liability company (LLC) or limited liability partnership (LLP)
> ☐ A partner in a partnership
> ☐ An officer, director, or managing executive of a corporation
> ☐ An owner of at least 5% of the voting or equity securities of a corporation
>
> ☐ No. None of the above applies. Go to Part 12.
> ☑ Yes. Check all that apply above and fill in the details below for each business.

[docket no. 1 at p. 82].

24. At the July 23, 2019 § 341 meeting of creditors, Mr. Johnson testified that his mother Haven Johnson owned 100% of El Reno Energy and that he had not served as officer of the company until approximately two weeks before the meeting, when his title was changed to "president."

25. During his October 16, 2019 Rule 2004 examination, Mr. Johnson testified El Reno Energy had never paid him more than $4,000.00 a month:

5

```
Q.   And how did you negotiate your salary?
A.   It's just -- it's kind of bare minimum what I
need to keep up my household with Sunny working.  That's
what I need so that's what I get paid.  And it's -- what
is it around, usually less than $4,000 a total a month.  I
don't think I've been paid more than that.
```

10/16/2020 Rule 2004 Tr. 97:9-14.

26.    El Reno Energy issued Mr. Johnson the following documents for 2019:

    a.    A 2019 W-2 form showing that the company paid Mr. Johnson a total of $6,000.00 in wages for that year.

    b.    An undated letter to Mr. Johnson reporting that $18,600.00 "has been reported to the IRS as nonemployee compensation (box 7) on Form 1099-Misc for year 2019."

27.    Mr. Johnson's counsel stated at his January 31, 2020 Rule 2004 examination that El Reno Energy would issue Mr. Johnson another 1099 form to reflect the truck payments that the company made on his behalf. 01/31/2020 Rule 2004 Tr. 127:7-10.

28.    Mr. Johnson testified that his total compensation from El Reno Energy in 2019 was approximately $30,000.00. 01/31/2020 Rule 2004 Tr. 126:14-16.

29.    Mr. Johnson's 2019 compensation from El Reno Energy therefore averaged to $2,500.00 each month.

30.    $2,500.00 is less than $6,000.00.

<u>Conflicting Testimony regarding El Reno Energy's business</u>

31.    The Conversion Motion states that while "El Reno's business is somewhat seasonal, with a substantial slowdown in the winter, but business is profitable over the

course of a year. The Debtors' employment situations and income are stable and not expect to change in the foreseeable future." Conversion Motion at ¶ 8.

32. Mr. Johnson further testified that, as of January 31, 2020, El Reno Energy owed over $100,000.00 to the IRS for unpaid 941 taxes accrued over 2019. 01/31/2020 Rule 2004 Tr. 138:13-24.

33. Mr. Johnson stated at his Rule 2004 examination that while El Reno Energy owned seventeen trucks, most of them were "parked" and that the company was "not making any money right this moment." 01/31/2020 Rule 2004 Tr. 140:10-21.

## Objection

34. The United States Trustee objects to the Conversion Motion for the following reasons. First, Debtors' Motion was filed in bad faith. Second, Debtors are estopped from asserting that Mr. Johnson may fund a plan through his earnings from El Reno Energy given their inconsistent positions. Third, Debtors are not eligible for Subchapter 5 relief because neither are engaged in commercial or business activities.

<u>Debtors do not have an absolute right to convert case from 7 to 11 when done in bad faith</u>

35. Debtors do not have an absolute right to convert their case from chapter 7 to 11 when they have acted in bad faith both before and after the filing of their original chapter 7 petition. *Marrama v. Citizens Bank,* 549 U.S. 365 (2007). In *Marrama,* the debtor, who originally filed a voluntary chapter 7 petition, made "misleading or inaccurate" statements about his home. *Id.* at 368. The debtor also failed to disclose the transfer of assets into a trust for no consideration in the seven months before the bankruptcy. *Id.* The debtor sought to convert his case to chapter 13 after the trustee announced his intention to recover the transferred properties. *Id.* at 368-369. Both the trustee and debtor's primary secured lender

7

objected to conversion. *Id.* at 369.

36. The Supreme Court held that the language of § 706(a) of the Bankruptcy Code does not give chapter 7 debtors an absolute right to convert their case, and nothing within the statute "limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374-75.

37. The Supreme Court did not define the standard of bad faith necessary to deny conversion from chapter 7. *Id.* at 375, n. 11. The Fifth Circuit Court of Appeals has held that bad faith may encompass "'pre-petition bad faith conduct,' postpetition bad faith conduct, or petitions that simply serve no legitimate bankruptcy purpose." *In re Krueger,* 812 F.3d 365, 370 (5th Cir. 2016)(citations omitted). *See also In re Jacobsen,* 609 F.3d 647, 660 (5th Cir. 2010)( holding that debtor did not have absolute right to dismiss case under § 1307(b) to escape conversion to chapter 7 under § 1307(c)); *In re Elliott,* 506 Fed.App. 291, 294 (5th Cir. 2013)(finding of bad faith not erroneous when debtor's schedules, statement of financial affairs, and means test contained a large number of misrepresentations and omissions).

38. Debtors want to convert their case to chapter 11 to escape the United States Trustee's Complaint. The United States Trustee objected to Debtors' discharge because Debtors 1) made numerous omissions and inaccuracies on their schedules, statement of financial affairs, and § 341 meeting testimony and 2) transferred at least two vehicles from Debtors' personal control and possession to a family-owned business. In addition, Cord Johnson appeared to operate a Ponzi-like scheme by overseeing phone banks or "boiler rooms" where employees called potential investors to raise working interest capital for

perpetually unproductive oil and gas wells. Mr. Johnson then pulled a portion of this working capital as distributions, and continued to do the same with El Reno energy.

39. Because Debtors have acted in bad faith both before and after the filing of their bankruptcy petition, their Conversion Motion their case to chapter 11 and elect subchapter 5 treatment should therefore be denied.

<u>Debtors quasi-estopped from asserting Mr. Johnson earns sufficient income from El Reno to fund plan of reorganization</u>

40. According to the Fifth Circuit Court of Appeals, the doctrine of quasi-estoppel

> precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.

*Stinnett v. Colorado Interstate Gas Go.,* 227 F.3d 247, 258 (5th Cir. 2000)(citations omitted). Quasi-estoppel applies only in those situations where the party's conduct giving rise to the estoppel has previously provided some benefit. *Long v. Turner,* 134 F.3d 312, 218 (5th Cir. 1998).

41. Debtors have taken inconsistent positions with regards to both Mr. Johnson's role with El Reno Energy and his gross income. When Debtors first filed their chapter 7 case in May 2019, Mr. Johnson's job titled was described as a "drilling manager" who grossed approximately $5,500.00 per month. At the July 23, 2019 § 341 meeting, Mr. Johnson testified under oath that he had only been an officer of El Reno Energy for the previous two weeks and that his mother Haven Johnson owned the company. Debtors' SOFA 4 showed that Mr. Johnson had grossed approximately $2,500.00 a month in 2018. In

9

October 2019, Mr. Johnson then testified that he had never earned more than $4,000.00 a month from El Reno Energy.

42. Debtors' Conversion Motion now takes the position that Mr. Johnson draws a $6,000.00 salary each month from El Reno Energy and the "business is profitable over the course of a year." Mr. Johnson testified at his Rule 2004 examination that he had never drawn income of more than $4,000.00 each month from El Reno Energy and that his total compensation (both draws and salary) for 2019 was approximately $30,000.00, or $2,500.00 each month. Furthermore, Debtors' assertion that El Reno Energy is profitable is contradicted by Mr. Johnson's Rule 2004 testimony that the company has accrued at least $100,000.00 in unpaid 941 taxes and was not able to keep all its trucks running.

43. Debtors should be estopped under the doctrine of quasi-estoppel from asserting that 1) Mr. Johnson is operating a business; 2) earns $6,000.00 each month in W-2 income; and that 3) El Reno Energy is profitable over the course of a year. Debtors filed their chapter 7 bankruptcy in part because Mr. Johnson had at least two state court lawsuits pending against him at the time. Debtors benefited by downplaying Mr. Johnson's role with El Reno Energy.

44. Now Debtors have shifted their representations regarding Mr. Johnson's role and earnings from El Reno Energy. Admittedly Debtors could argue that much has changed post-petition between the filing of the bankruptcy on May 22, 2019 and the Conversion Motion, and that Mr. Johnson's mother has both 1) promoted Mr. Johnson to an officer and 2) increased his salary to $6,000.00 since filing. However, as late as January 31, 2020, Mr. Johnson testified that El Reno Energy owed $100,000.00 in 941 taxes to the IRS and had not been able to keep its drivers fully employed that winter. Furthermore, the United

10

States Trustee believes (and alleges in his Complaint) that Mr. Johnson in fact exercised control over El Reno Energy pre-petition and did not fully disclose his role and income.

45.    Debtors' shifting representations regarding 1) Mr. Johnson's gross earnings from El Reno Energy and 2) his role with the company should therefore be estopped.  These shifting representations also further evidence Debtors' bad faith in seeking conversion of their case to chapter 11.

<u>Debtors not eligible for relief under Subchapter V</u>

46.    Debtors argue they are eligible for relief under subchapter V of chapter 11 because Mr. Johnson is "engaged in commercial or business activities" by virtue of his employment with El Reno Energy.

47.    The Small Business Reorganization Act of 2019 ("SBRA") was intended to "address reorganization of small businesses." 116 Pub. L. 54, 2019, Enacted H.R. 3311, 1133 Stat. 1079.

48.    Section 1182(1) of subchapter V originally defined "debtor" as a "small business debtor," which in turn is defined under § 101(51D) of the Bankruptcy Code:

> subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,000,0001 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor…

11 U.S.C. § 101(51D)(A).

49.    Effective March 27, 2020, § 1182(1) was temporarily amended to define "debtor"

11

as follows:

> (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor….

11 U.SC. § 1182(1)(A); "Coronavirus Aid, Relief, and Economic Security Act," ("CARES Act"), Pub. L. 116-136, March 27, 2020, 134-Stat 381, § 1113(a)(3).

50. Both §§ 101(51D) and 1182(1)(A) define "debtor" as a "person engaged in commercial or business activities." The statutory use of the word "engaged" suggests that debtors may elect subchapter V treatment only if they are actively carrying out "commercial or business activities" at the time of the filing of the petition. This definition is the most logical given that both definitions also make eligibility contingent on whether at least 50% of the debtor's debts "arose from the commercial or business activities of the debtor." 11 U.S.C. §§ 101(51D) and 1182(1)(A).

51. The only decision to date which has examined whether a subchapter V debtor must be currently "engaged in commercial or business activities" during the pendency of the bankruptcy is *In re Wright,* No. 20-01035, ECF Entry 37 (Bankr. S. C. April 27, 2020). The *Wright* court found that an individual who was no longer currently engaged in commercial or business activities was still eligible for relief under subchapter V because the debtor sought to "address[] residual business debt and otherwise meets the remaining requirements under § 105(51D)." *Id.* at *5-*6.

52. However, the *Wright* court ignores the basic statutory interpretive canon that "[a]

12

statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn,* 542 U.S. 88, 101 (2004)(citations omitted). The *Wright* decision treated the phrase "engaged in commercial or business activities" as superfluous because the debtor met the other requirements of § 1182(1)(A). The *Wright* decision should not be treated as persuasive authority on this issue.

53. Courts have considered the meaning of the word "engaged" when analyzing whether subchapter IV of chapter 11 applies only to operating railroads. These cases may be helpful given that the Bankruptcy Code uses "engaged" in defining both "small business debtor" and "railroad." 11 U.S.C. §§ 101(44); (51D); and 1182(1)(A). The Bankruptcy Code defines "railroad" as a "common carrier by railroad engaged in the transportation of individuals or property or owner of trackage facilities leased by such a common carrier." 11 U.S.C. § 101(44).

54. The Third Circuit Court of Appeals held that a chapter 11 debtor who did not operate a railroad as of the petition date was not a "railroad" and therefore ineligible for treatment under subchapter IV of chapter 11. *Hileman v. Pittsburgh & Lake Erie Props. (In re Pittsburgh & Lake Erie Props.),* 290 F.3d 516, 521 (3d Cir. 2002). Similarly, a railroad that had relinquished its common carrier license was no longer eligible for subchapter IV treatment. *Wheeling-Pittsburgh Steel Corp. v. McCune,* 836 F.2d 153, 161 (3d Cir. 1987).

55. If Debtors' representations that Mr. Johnson does not control or own El Reno Energy are true, then they are not eligible for relief under subchapter V because neither are currently "engaged in business or commercial activities." The Conversion Motion

13

concedes that Ms. Johnson, a wage earner, does not qualify for subchapter V relief in her own right. Conversion Motion at ¶ 13. The position that Mr. Johnson is "engaged in commercial or business activities" by virtue of his being a purported W-2 wage earner working at his mother's pleasure, is inconsistent with the argument that his wife is not.

<u>In the alternative, if the Court grants motion and permits Debtors to elect subchapter V treatment, it should do so without prejudice to the United States Trustee moving to remove Debtors from possession</u>

56. In the alternative, if the Court grants Debtors' Conversion Motion their case from chapter 7 to chapter 11 and permits them to elect treatment under subchapter V, the United States Trustee asks such relief be granted without prejudice to filing a motion seeking to remove Debtors from possession under 11 U.S.C. § 1185(a).

## **Conclusion**

In conclusion, the United States Trustee respectfully requests this Court to deny Debtors' Conversion Motion and for authority to elect subchapter V treatment. The United States Trustee further requests any other relief to which he may be entitled.

DATED: May 26, 2020                           Respectfully submitted,

WILLIAM T. NEARY
UNITED STATES TRUSTEE

<u>/s/ Erin Marie Schmidt</u>
Erin Marie Schmidt
Texas State Bar No. 24033042
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-1075
Erin.Schmidt2@usdoj.gov

## Certificate of Service

      I certify that I sent a copy of the foregoing document via first-class, United States mail, postage prepaid, or via ECF on May 26, 2020, to the following:

      */s/ Erin Marie Schmidt*
      Erin Marie Schmidt

**Alice Bower**
Law Office of Alice Bower
6421 Camp Bowie Blvd
Suite 300
Fort Worth, TX 76116
bknotice@alicebower.com

**Areya Holder**
Law Office of Areya Holder, P.C.
901 Main Street, Suite 5320
Dallas, TX 75202
trustee@holderlawpc.com

**Robert A. Simon**
Whitaker Chalk Swindle & Schwartz, PLLC
301 Commerce Street
Suite 3500
Fort Worth, TX 76102
rsimon@whitakerchalk.com