

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 1, 2021**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 19-42063-ELM |
| CORD DAVID JOHNSON and § | |
| SUNNY LEA JOHNSON, § | Chapter 7 |
| § | |
| Debtors. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the request of the debtors Cord David Johnson ("**Cord**") and Sunny Lea Johnson ("**Sunny**" and together with Cord, the "**Debtors**") for conversion of their pending chapter 7 bankruptcy case to a case under chapter 11 of the Bankruptcy Code, conditioned, however, on the case being authorized to proceed as a joint case under subchapter V of chapter 11. The United States Trustee and the Hill Creditors (as hereafter defined) oppose the request, asserting, among other things, that the Debtors are ineligible for relief under subchapter V of chapter 11.

Thus, the dispute presents the Court with two pivotal questions: first, whether an individual who previously owned and managed certain now-defunct businesses and who, on account of such

Page 1

ownership and involvement, has mostly business-related debts, is "*engaged in*" commercial or business activities for purposes of eligibility under subchapter V of chapter 11 of the Bankruptcy Code; and second, whether an employed officer of a non-debtor business entity, having no ownership in or ultimate control over the non-debtor business entity, is engaged in "*commercial or business activities*" for purposes of eligibility under subchapter V of chapter 11 of the Bankruptcy Code. Concluding in each instance under the facts and circumstances of this case that such an individual is not engaged in commercial or business activities for purposes of eligibility under subchapter V of chapter 11, the Court will deny the request for conversion.

## *PROCEDURAL BACKGROUND*

On May 22, 2019 (the "**Petition Date**"), the Debtors, a married couple, filed their joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. Following several months of informal and formal discovery with respect to the Debtors' assets and financial affairs,[1] William T. Neary, the United States Trustee for Region 6 (the "**U.S. Trustee**"), initiated an adversary proceeding against the Debtors to object to their chapter 7 discharge.[2] In response, the Debtors, among other things, filed the current *Motion to Convert Their Chapter 7 Case to a Case Under Chapter 11, and For Authority to Elect Treatment Under Subchapter 5, as a Small Business Case* [Docket No. 57] (the "**Motion**"). As bluntly acknowledged by the Debtors, they filed the Motion to avoid the U.S. Trustee's discharge objection.

Both the U.S. Trustee and creditors John Hill, Armadillo Exploration, LLC and Esperanza Energy Corp. (collectively, the "**Hill Creditors**" and together with the U.S. Trustee, the

---

[1] *See, e.g.*, Docket Nos. 17, 20, 24-25, 27-29, 30, 32-37, 41 and 43-45.

[2] *See* Adversary No. 20-04017 (objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B) and 727(a)(4)(A)).

"**Objectors**") have timely objected to the Motion.³ The U.S. Trustee opposes conversion for the following three reasons: *first*, the Debtors are ineligible for relief under subchapter V of chapter 11; *second*, the Debtors have filed and prosecuted the bankruptcy case in bad faith;⁴ and *third*, the Debtors will not have sufficient income to fund a plan of reorganization, arguing in connection therewith that the Debtors should be barred by the doctrine of quasi-estoppel from claiming that Cord earns more than he previously disclosed in filings with the Court (the second and third grounds of objection collectively referred to as the "**Secondary Objections**"). The Hill Creditors, in their objection, simply adopt each of the grounds of objection lodged by the U.S. Trustee. The Debtors have filed a reply in response to the U.S. Trustee's objections.⁵ On August 5 and 13, 2020, the Court conducted an evidentiary hearing on the Motion.

## JURISDICTION

The Court has jurisdiction of the proceeding involving the Motion pursuant to 28 U.S.C. §§ 1334 and 157 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Miscellaneous Rule No. 33)* of the United States District Court for the Northern District of Texas. Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409. The proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTUAL BACKGROUND

**A.     *Cord's Prepetition Involvement in the Oil and Gas Industry***

Prior to the Petition Date, Cord owned and managed several different oil and gas companies. Specifically, as disclosed in the Debtors' bankruptcy schedules and statement of

---

³ *See* Docket Nos. 61 and 64.

⁴ Citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) (affirming denial of debtor's request to convert chapter 7 case to chapter 13 case on the basis of the debtor's bad faith conduct).

⁵ *See* Docket No. 71.

financial affairs, between 2006 and 2018 Cord owned the following companies having the following disclosed periods of existence noted parenthetically (collectively, the "**Defunct Companies**"):[6]

>Crooked Oak, LLC (5/30/2006 – 6/1/2018)
>Santa Rita Holdings, LLC (4/16/2008 – 2/28/2017)
>Jacie Oil Company, LLC (1/31/2014 – 1/27/2017)
>R1CDF LLC (7/28/2014 – 1/26/2018)
>Comanche Cove Resource Management LLC (9/3/2014 – 1/26/2018)
>S. Johnson Family LP (9/8/2014 – 1/26/2018)
>JCS Oil and Gas, LLC (3/22/2017 – 1/25/2019)

Each of the Defunct Companies was previously involved in the exploration and production of oil and gas. To fund the drilling costs of wells targeted for development by Cord, Cord successfully raised investment capital through a variety of private placements. Among the investors were the Hill Creditors. While certain of the drilling projects led to the development of commercially viable wells, many others resulted in dry holes or non-commercial wells. According to Cord, the lack of sufficient drilling successes combined with the suppressed oil and gas market ultimately led to the failure of each of the Defunct Companies and none of the Defunct Companies remains in business.

### B.     *Cord's Prepetition Transition to El Reno*

On June 9, 2017, Lloyd Johnson ("**Lloyd**"), Cord's father, organized El Reno Energy, LLC ("**El Reno**"), a member-managed Texas limited liability company.[7] El Reno was to conduct business in both the oil and gas industry and the trucking industry. At all times prior to Lloyd's death, Lloyd was the sole owner and managing member of El Reno.[8]

---

[6] *See* Debtors' Exh. 3 (Amended Schedule A/B, Response to Question 19); Debtors' Exh. 5 (Amended Statement of Financial Affairs, Response to Question 27).

[7] *See* Debtors' Exh. 8 (organizational documents of El Reno); Debtors' Exh. 10 (Company Agreement of El Reno, § 4.1.A. – providing for member management).

[8] *See* Debtors' Exh. 10.

Shortly after organizing El Reno, Lloyd was diagnosed with pulmonary fibrosis. In the latter part of 2017, as Lloyd's health began to decline and the remainder of Cord's companies collapsed, Cord began to focus his attention on El Reno, initially assisting his father with El Reno's oil and gas operations. In 2018, as Cord's involvement with El Reno increased, Lloyd added Cord to El Reno's regular payroll. Thereafter, as Lloyd's health continued to decline, Cord's level of involvement in all aspects of El Reno's business increased.

On November 7, 2018, Lloyd passed away.[9] Pursuant to the terms of Lloyd's Last Will and Testament, Lloyd's 100% ownership interest in El Reno was bequeathed to Haven Johnson ("**Haven**"), Lloyd's wife and Cord's mother.[10] Upon transfer of the ownership, Haven became the new sole managing member of El Reno.[11] In such capacity, Haven obtained (and continues to have) ultimate control of El Reno and its operations, including the ability to hire and fire officers and employees at will. Following Lloyd's death, Haven maintained Cord's employment by El Reno.

C.  **The Debtors' Bankruptcy Filing and Postpetition Employment**

Despite Cord's effort to obtain renewed financial stability in his new role with El Reno, Cord was unable to escape the trail of damage caused by the failure of the Defunct Companies. Many creditors of the Defunct Companies remained unpaid and, among other things, certain drilling project investors, including the Hill Creditors, initiated litigation against Cord (and others) to pursue claims for fraudulent investment solicitation.[12] Facing a June 2019 trial in the investor

---

[9] *See* Debtors' Exh. 8.

[10] *See* Debtors' Exh. 7 (Last Will and Testament of Lloyd Johnson, art. II.C.).

[11] *See* Debtors' Exh. 11.

[12] *See, e.g.*, Debtors' Exh. 5 (Amended Statement of Financial Affairs, Response to Question 9 – listing the pending litigation of *E6 Resources LLC, et al. v. Crooked Oak LLC, et al.*, 342nd Judicial District Court, Tarrant County, Texas); Debtors' Exh. 4 (Amended Schedule E/F, Line 4.11 – listing disputed claim of $500,000 in the name of

litigation and believing that their assets remained exposed to certain outstanding debts of the Defunct Companies, on May 22, 2019, the Debtors filed for protection under chapter 7 of the Bankruptcy Code.

As disclosed by the Debtors in their bankruptcy filings, and as acknowledged at the hearing, as of the Petition Date neither of the Debtors owned an interest in any operating businesses and neither of the Debtors was engaged in any business of his/her own. This remains the case to this date. The Debtors do not sell any goods or services of their own, they do not have any employees, and they do not have any personal business expenses outside of the possible residual liability related to the Defunct Companies. Since before the Petition Date, the Debtors' sole source of income has come from their status as W-2 employees.

In Cord's case, Cord has remained a full-time employee of El Reno. At the time of the bankruptcy filing, Cord held the position of Drilling Manager.[13] However, shortly after the Petition Date, on June 14, 2019, Haven appointed him to the position of President.[14] In such capacity, Cord has been managing the day-to-day business affairs of El Reno. As recognized by both Cord and Haven, however, Cord has consistently served at the pleasure of Haven and his employment has remained terminable at will by her. Cord has never been issued any ownership interest in El Reno and control of the company has rested, and continues to rest, solely and exclusively with Haven.

---

Armadillo Exploration LLC – and Part 3 – listing the remaining Investor Creditors and E6 Resources LLC as parties associated with the listed disputed claim).

[13] *See* Debtors' Exh. 2 (Schedule I).

[14] *See* Debtors' Exh. 12.

In Sunny's case, Sunny has been employed throughout the entirety of the bankruptcy proceeding as a full-time medical/surgical nurse at Harris Methodist Southwest Hospital in Fort Worth, Texas.[15] She has had zero involvement with the business of El Reno.

### D. The Discharge Objection and Request for Conversion

On March 13, 2020, the U.S. Trustee filed a complaint against the Debtors to object to their chapter 7 discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) (fraudulent prepetition transfer of property and concealment), 727(a)(2)(B) (unauthorized post-petition transfer of estate property and concealment), and 727(a)(4)(A) (false oath or account in connection with the case).[16] As previously indicated, on May 4, 2020, the Debtors filed the Motion with the objective of avoiding the discharge objection.

Importantly, the Debtors' request for conversion to chapter 11 is expressly conditioned on the Court's simultaneous authorization for the chapter 11 case to proceed under subchapter V of chapter 11. And as expressly reaffirmed by counsel for the Debtors at the hearing, should the Court determine that either of the Debtors is not eligible for subchapter V relief, then the Debtors no longer wish to convert the case to chapter 11.

### DISCUSSION

### A. Statutory Basis for Conversion to Chapter 11

Pursuant to section 706 of the Bankruptcy Code, a chapter 7 debtor may convert its chapter 7 case to a case under chapter 11 of the Bankruptcy Code at any time if the debtor may be a debtor under chapter 11 and the bankruptcy case was not previously converted under section 1112, 1208 or 1307 of the Bankruptcy Code.[17] Pursuant to section 109 of the Bankruptcy Code, with the

---

[15] *See* Debtors' Exh. 2 (Schedule I).

[16] *See* Debtors' Exh. 1 (copy of complaint).

[17] *See* 11 U.S.C. § 706(a), (d).

exception of a stockbroker and commodity broker, a person that may be a debtor under chapter 7 of the Bankruptcy Code may also be a debtor under chapter 11 of the Bankruptcy Code.[18]

With that in mind, here, it is undisputed that the Debtors were eligible for chapter 7 relief, that their chapter 7 case was not previously converted from another chapter, and that neither of the Debtors is a stockbroker or commodity broker. Thus, putting aside for the moment the Objectors' Secondary Objections, from a statutory standpoint the Debtors appear to be eligible for relief under chapter 11 of the Bankruptcy Code.

**B.** *Statutory Basis for Relief Under Subchapter V of Chapter 11*

Given the conditional nature of the Debtors' conversion request, however, it also necessary to consider the Debtors' eligibility for relief under subchapter V of chapter 11. Because the Objectors have timely challenged the Debtors' asserted eligibility for relief under subchapter V, the Debtors bear the burden of establishing such eligibility.[19]

Subchapter V was added to the Bankruptcy Code by the Small Business Reorganization Act of 2019, effective February 19, 2020 (the "**SBRA**").[20] With the addition of subchapter V, section 103(i) of the Bankruptcy Code now provides that subchapter V of chapter 11 "applies only in a case under chapter 11 in which a debtor (as defined in section 1182) elects that subchapter V of chapter 11 shall apply."[21] Section 1182, in turn, provides that a "debtor" means a "small

---

[18] *See id.* § 109(d).

[19] *See, e.g., In re City of Bridgeport*, 129 B.R. 332, 334 (Bankr. D. Conn. 1991) (burden of proof with respect to eligibility under a particular chapter of the Bankruptcy Code rests with the party claiming the existence of such eligibility).

[20] *See* Pub. L. No. 116-54, 133 Stat. 1079 (2019).

[21] 11 U.S.C. § 103(i).

business debtor"[22] and section 101(51D) of the Bankruptcy Code defines a "small business debtor" as follows:

> The term "small business debtor" –
>
> (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor;
>
> (B) does not include –
>
>> (i) any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,725,625 (excluding debt owed to 1 or more affiliates or insiders);
>>
>> (ii) any debtor that is a corporation subject to the reporting requirements under section 13 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m, 78o(d)); or
>>
>> (iii) any debtor that is an affiliate of an issuer (as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)).

11 U.S.C. § 101(51D).

Thus, based upon the foregoing statutory definition, to qualify as a "small business debtor" eligible for relief under subchapter V of chapter 11, one must, among other things, be "engaged in commercial or business activities" or be an affiliate of such a debtor (subject to an exception that is inapplicable to this case).

---

[22] *Id*. § 1182(1). Of note, while section 1182 was amended by the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**") to provide for a new, temporarily-effective definition of "debtor," the provision of the CARES Act within which section 1182 was modified only applies to bankruptcy cases commenced on or after the date of enactment of the CARES Act – March 27, 2020. *See* Pub. L. No. 116-136, § 1113(a)(1), (a)(3), 134 Stat. 281, 310-11 (2020). Consequently, because the Debtors' case was commenced prior to such date, the amended definition is inapplicable to this case.

C.   *The Meaning of "Engaged in Commercial or Business Activities"*

The dispute in this case revolves around the meaning of "engaged in commercial or business activities." In particular, the parties have differing views on the meaning of the words "engaged in" and "commercial or business activities," neither of which are separately defined in the Bankruptcy Code.

The task of resolving statutory disputes begins where all such disputes must begin – with the language of the statute itself.[23] This is because courts are to presume that Congress has said in a statutory provision what it means, and means in the statutory provision what it says there.[24] In applying the plain language of a statute, it is also helpful to note that "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."[25]

Accordingly, here, if the words "engaged in" and "commercial or business activities" can be given their respective plain and unambiguous meanings in the context of section 101(51D), then the interpretative inquiry ends and the Court must apply those plain and unambiguous meanings in resolving the dispute.[26] "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[27]

1.   *"Engaged In"*

With the foregoing in mind, the first interpretative dispute between the parties involves the temporal scope of the words "engaged in" in section 101(51D). According to the Debtors, the

---

[23] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

[24] *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

[25] *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1179 (5th Cir.) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)), *cert. denied*, 517 U.S. 1244 (1996).

[26] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citing *Ron Pair Enters., Inc.*, 489 U.S. at 240)).

[27] *Robinson*, 519 U.S. at 341.

words have no temporal limitation and, thus, in relation to commercial or business activities, may refer to both current and former commercial or business activities. As such, the Debtors argue that, based upon Cord's *prior* ownership and management of the Defunct Companies, Cord qualifies as a person "engaged in" commercial or business activities for purposes of section 101(51D), emphasizing that a majority of the debt that they face has a connection to Cord's prior involvement with the Defunct Companies.

The Objectors disagree. They argue that a debtor must instead be "*actively carrying out*" commercial or business activities "*at the time of the filing of the petition*" to be deemed "engaged in" commercial or business activities for purposes of section 101(51D). Thus, according to the Objectors, because Cord was no longer actively carrying out any activity with respect to any of the Defunct Companies as of the Petition Date, he fails to qualify as a person "engaged in" commercial or business activities for purposes of section 101(51D).

While the Court finds the Objectors' proposed "actively carrying out" test to be too narrowly fashioned,[28] for the reasons set forth below the Court nevertheless ultimately agrees with the Objectors' assessment that the "engaged in" inquiry is inherently contemporary in focus instead of retrospective, requiring the assessment of the debtor's current state of affairs as of the filing of the bankruptcy petition.

In particular, starting first with the statutory language itself, "engaged" in the context of section 101(51D) is commonly defined as "involved in activity: occupied, busy."[29] Thus, applying

---

[28] Consider, for example, the situation where a debtor has been forced to temporarily cease operations for unexpected non-financial reasons, such as weather, a natural disaster, or to comply with regulatory requirements. Many small businesses have recently experienced this very situation, having been ordered to temporarily cease operations on account of the COVID-19 pandemic. While these very same businesses planned to (and most often did) reopen once permitted, had they filed for bankruptcy protection while temporarily shut down, the Objectors' proposed test would have precluded them from being eligible for subchapter V relief because they were not *actively carrying out* commercial or business activity as of the date of the bankruptcy filing.

[29] *See* "engaged", *Merriam-Webster Online Dictionary* (2021) (www.merriam-webster.com/dictionary/engaged).

the ordinary meaning of "engaged" to the language of section 101(51D), a person "engaged in" commercial or business activities is a person occupied with or busy in commercial or business activities – not a person who at some point in the past had such involvement.[30]

Second, application of this interpretation is also consistent with the specific context in which the language is used.  In this regard, section 101(51D) is designed to identify those debtors who are in particular need of the benefits of small business debtor treatment, benefits that are largely designed to facilitate expediency and minimize cost.[31]  Such benefits are essential to the ability of a small business that is currently occupied with/busy in commercial or business activities to successfully reorganize as a going concern.  They are not essential to a small business that is no longer occupied with/busy in any commercial or business activities.  Indeed, relevant legislative history associated with the SBRA highlights this very point:

> Notwithstanding the 2005 Amendments [to the Bankruptcy Code that first introduced the small business debtor chapter 11 provisions], small business chapter 11 cases continue to encounter difficulty in successfully *reorganizing*….[T]he [SBRA] legislation allows these debtors "to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to *remain in business*" which "not only benefits the owners, but employees, suppliers, customers, and others who rely on that business."

H.R. Rep. No. 116-171, 116th Cong., 1st Sess. (2019) (emphasis added), *reprinted at* 2019 WL 3401849 (Jul. 23, 2019) (quoting comments of Rep. Ben Cline).[32]

---

[30] *See also In re Thurman*, Case No. 20-41400-can11, 2020 WL 7249555, at *4 (Bankr. W.D. Mo. Dec. 8, 2020) ("The plain meaning of 'engaged in' means to be actively and currently involved").

[31] *See, e.g.*, 11 U.S.C. §§ 1102(a)(3) (eliminating appointment of creditors' committee in subchapter V case unless ordered otherwise), 1125(f) (minimizing disclosure statement requirements), 1129(e) (requiring court to confirm plan that complies with § 1129 and is filed in accordance with § 1121(e) by no later than 45 days after the plan is filed), 1181(b) (eliminating requirement of disclosure statement in subchapter V case unless ordered otherwise), 1189(a) (providing that only the debtor may file a plan in subchapter V case), 1191(b)-(c) (enabling cramdown confirmation of fully nonconsensual plan that commits disposable income over period of 3 to 5 years without the necessity of complying with the "absolute priority rule" of § 1129(b)(2)(B)).

[32] The Debtors rely heavily upon a recent bankruptcy opinion out of the District of South Carolina to the contrary – *In re Wright*, C/A No. 20-01035-HB, 2020 WL 2193240 (Bankr. D.S.C. Apr. 27, 2020).  In *Wright*, despite referring to the same legislative history and noting that it "indicates [the SBRA] was intended to improve the ability of small businesses to reorganize and ultimately remain in business," the court curiously then wholly disregards such legislative

Third, in the broader context of the Bankruptcy Code as a whole, it is also significant to note that Congress did not write on a blank slate when utilizing the language "engaged in" in the definition of "small business debtor."[33] Congress previously used the same language in the eligibility provisions applicable to subchapter IV of chapter 11 and chapter 12 of the Bankruptcy Code. As such, Congress had the benefit of how the language had been interpreted by courts in the past in drafting the "small business debtor" definition of section 101(51D) and could have elaborated upon such language or used different language if it had concern with respect to such judicial interpretation.

In the case of subchapter IV of chapter 11, which involves railroad debtors,[34] for example, section 101(44) of the Bankruptcy Code defines a "railroad" as a common carrier "engaged in" the transportation by railroad of individuals or property or the owner of trackage facilities leased by such a common carrier.[35] When confronted with the question of whether the provisions of subchapter IV applied in a case involving a debtor that had ceased all operations as a rail carrier prior to its bankruptcy filing, the Court of Appeals for the Third Circuit found the "engaged in" inquiry to be inherently contemporary instead of retrospective in focus, explaining that, contrary to the language "spin" efforts of the appellants to apply subchapter IV to *former* railroads, the definition of "railroad" "us[es] the present-tense 'engaged'" such that subchapter IV is confined to "bankruptcy petitioners who are railroads at the time of petition or thereafter."[36]

---

history in opining that a debtor is not required to be currently engaged in any commercial or business activities and may, instead, qualify as a small business debtor based upon its intent to "address[ ] residual business debt" in the case. *See id.* at *3.

[33] *Thurman*, 2020 WL 7249555, at *3.

[34] *See* 11 U.S.C. § 103(h).

[35] *See id.* § 101(44).

[36] *See Hileman v. Pittsburgh & Lake Erie Props., Inc. (In re Pittsburgh & Lake Erie Props., Inc.)*, 290 F.3d 516, 519 (3rd Cir. 2002).

In the case of chapter 12, which is applicable to family farmers,[37] section 101(18) of the Bankruptcy Code defines a "family farmer" as an individual or individual and spouse "engaged in" a farming operation (subject to debt limits and requirements).[38] Here, again, courts have applied a contemporary analysis to the "engaged in" terminology, limiting eligibility to those currently occupied with/busy in a farming operation.[39] However, inasmuch as farming is inherently seasonal and farming operations are susceptible to periodic interruption, courts have occasionally been faced with the question of how to interpret "engaged in" where the debtor is not occupied with/busy in the actual *physical activity* of farming at the time of the filing of the petition. Even in this situation, a majority of courts, continuing to focus on the debtor's current state of affairs, has framed the analysis as "whether, in view of the totality of the circumstances, the debtor *intends to continue to engage in a 'farming operation'* even though he or she was not engaged in the physical activity of farming at the time the petition was filed."[40]

Applying the foregoing principles to the case at hand, the evidence is clear that each of the Defunct Companies had ceased all commercial and business activities prior to the Petition Date and that Cord was not occupied with or otherwise busy in – *i.e.* "engaged in" – any commercial or business activities with respect to the Defunct Companies. Additionally, no evidence was introduced to suggest that the cessation of such commercial and business activities was in any way only temporary in nature, or that Cord intended to cause any of the Defunct Companies to resume operations. Consequently, under the facts and circumstances of this case, the Debtors have failed

---

[37] *See* 11 U.S.C. § 109(f).

[38] *See id.* § 101(18).

[39] *See, e.g., Thurman*, 2020 WL 7249555, at *3-4.

[40] *Watford v. Federal Land Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1528 (11th Cir. 1990) (emphasis added); *see also In re McLawchlin*, 511 B.R. 422, 427-28 (Bankr. S.D. Tex. 2014).

to establish that Cord qualifies as a small business debtor for purposes of subchapter V of chapter 11 based upon his prior ownership and management of the Defunct Companies.

### 2. *"Commercial or Business Activities"*

The second interpretative dispute between the parties involves the scope of the words "commercial or business activities" in section 101(51D). While the Debtors appear to acknowledge that an individual is not deemed to be engaged in "commercial or business activities" based solely upon an individual's employment by an operating company, they argue that Cord's day-to-day management of El Reno as its officer (currently its President) results in Cord's engagement in "commercial or business activities."

Here, again, the Objectors disagree. They argue that the Debtors' focus on Cord's title with El Reno and the managerial authority that it wields is still insufficient under the facts and circumstances of this case to equate to Cord's individual engagement in commercial or business activities. The Court agrees.

Beginning with the statutory language itself, "commercial" in the context of section 101(51D) is commonly defined as "of or relating to commerce," "commerce" is commonly defined as "the exchange or buying and selling of commodities on a large scale involving transportation from place to place," and "commodity" is commonly defined as "an economic good."[41] "Business" in the context of section 101(51D) is commonly defined as being "commercial or mercantile" in nature, "mercantile" is commonly defined as "of or relating to merchants or trading," and "merchant" is commonly defined as "a buyer and seller of commodities for profit."[42]

---

[41] *See* "commercial", "commerce" and "commodity", *Merriam-Webster Online Dictionary* (2021) (www.merriam-webster.com/dictionary/commercial, www.meriam-webster.com/dictionary/commerce and www.meriam-webster.com/dictionary/commodity).

[42] See "business", "mercantile" and "merchant", *Merriam-Webster Online Dictionary* (2021) (www.meriam-webster.com/dictionary/business, www.meriam-webster.com/dictionary/mercantile and www.meriam-webster.com/dictionary/merchant).

Thus, applying the ordinary meaning of "commercial or business activities" to the language of section 101(51D), a person engaged in "commercial or business activities" is a person engaged in the exchange or buying and selling of economic goods or services for profit.

Here, the Debtors have acknowledged that neither of them is engaged in the exchange or buying and selling of any economic goods or services of their own for profit. And in relation to El Reno, inasmuch as the Debtors do not have an ownership interest in the company, it also cannot be said that Cord is engaged in the exchange or buying and selling of any economic goods or services for the Debtors' indirect profit. Put simply, Cord is nothing more than an employee of El Reno with heightened obligations to the company on account of his role as an officer. As such, Cord does not qualify as a small business debtor under section 101(51D).

Application of the foregoing interpretation of "commercial or business activities" to the facts and circumstances of this case is also consistent with the specific context in which the language is used and with the broader context of the Bankruptcy Code as a whole. As previously indicated, the small business debtor provisions of the Bankruptcy Code are designed to confer benefits that will facilitate the expedient and cost-efficient reorganization of an eligible debtor's business. Authorizing a W-2 employee of a non-debtor company, even one having the title of President, to access such benefits would do nothing to advance the reorganizational interests of the non-debtor company or to otherwise maintain the ongoing operations of the non-debtor company.

### D.    *Small Business Debtor Affiliate Status*

Finally, even if Cord had qualified as a small business debtor, contrary to the Debtors' position, Sunny fails to qualify as an affiliate of Cord for purposes of section 101(51D). Section 101(2) of the Bankruptcy Code defines an "affiliate" as follows:

> The term "affiliate" means –
>
> (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding securities of the debtor, other than an entity that holds such securities –
>
>> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
>>
>> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
>
> (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities –
>
>> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
>>
>> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
>
> (C) person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or
>
> (D) entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement.

11 U.S.C. § 101(2). In applying such definition to the determination of whether Sunny qualifies as an affiliate of Cord for Bankruptcy Code purposes, obviously the Debtors do not have an ownership interest in one another and, in addition to acknowledging that neither of them has any business of his/her own, the Debtors have not provided any evidence of a lease or operating agreement between the two of them. In fact, it appears that the Debtors just simply erroneously conflated the definitions of "affiliate" and "insider" in arguing for Sunny's affiliate status.[43]

In any event, because Sunny fails to qualify as an affiliate of Cord for purposes of the "small business debtor" definition of section 101(51D) and because the Debtors have conditioned their conversion request on the Court authorizing the case to proceed as a joint case under

---

[43] *See* 11 U.S.C. § 101(31)(A)(i) (defining "insider" as including a relative of the debtor).

subchapter V of chapter 11, Sunny's ineligibility for subchapter V relief is also an independent basis upon which to deny the Debtors' conversion request.

## *CONCLUSION*

For the reasons set forth above, under the facts and circumstances of this case, neither of the Debtors qualifies as a small business debtor under the provisions of section 101(51D) of the Bankruptcy Code and, thus, neither of the Debtors is eligible for relief under subchapter V of chapter 11 of the Bankruptcy Code. Consequently, because the Debtors' request for conversion of their chapter 7 case to a case under chapter 11 is expressly conditioned on the simultaneous authorization of the case to proceed under subchapter V, the Motion will be denied, it being unnecessary to consider the Secondary Objections of the Objectors.

## **ORDER**

Accordingly, it is hereby:

**ORDERED** that the Motion be and is hereby DENIED.

# # #   END OF MEMORANDUM OPINION AND ORDER   # # #